## MURPHY *v.* WILSON ET AL.

·CONTEMPT.—*Power of Justice of the Peace.—Juror.*—A justice of the peace has power to attach and punish as for a contempt jurors who, after being sent out to consult upon a verdict, escape and go away without leave of the justice, before returning a verdict.

·SAME.—When a jury is sent out by a justice of the peace to consult upon their verdict, the justice must determine when they have consulted together for a reasonable time ; the jury cannot determine this for themselves, and separate without leave of the justice.

·SAME.—If jurors do thus separate without leave of the justice, no affidavit of the fact need be filed to authorize the justice to issue an attachment against the jurors for the same.

.SAME.—It is not a valid excuse for such jurors that they were hungry, or that the place assigned them for their deliberations was not comfortable or well adapted to the purpose.

·SAME.—*Sufficiency of Writ.*—A writ of attachment in such case, reciting the names of the jurors, and alleging their escape without leave of the justice, and ordering their arrest to answer for the alleged contempt, is substantially correct, and is sufficient to authorize the arrest of the parties.

.PRACTICE.—*Reasons for New Trial.*—Assigning as a cause, in a motion for a new trial, the refusal of the court to admit certain evidence " as shown in the bill of exceptions," when at the time of the motion there is no bill of exceptions, is insufficient.

From the Henry Circuit Court.

*J. Brown* and *J. M. Brown,* for appellant.

DOWNEY, J.—This was an action by the appellant against the appellees, commenced before a justice of the peace, appealed to the common pleas, and by the abolition of that court tried in the circuit court. It appears that Murphy was a juror, empanelled with others to try a cause before Wilson, who was a justice of the peace. After the jury had been sent out to deliberate, in about an hour and a half or two hours, they called the constable having them in charge, and gave him " a verdict to disagree " which they had made out. He went away, and after about fifteen minutes came back and said the justice of the peace refused to accept it, etc. They remained about an hour and a half longer, and then sent for the justice and asked to be released. This he refused. They told him they would release themselves ; and

Murphy *v.* Wilson *et al.*

in about half an hour afterward they left their room and went away without permission, and without having made a verdict. On the next day, the justice of the peace issued an attachment against them for contempt, in thus leaving his court without his permission and against his orders. Young, the other defendant, was the constable, and he executed the process, arrested the plaintiff Murphy, and took him before the justice of the peace.

For these acts, the justice and the constable were sued in this action. Both before the justice of the peace and in the circuit court, there was a finding and judgment for the defendants.

In the circuit court, there was a motion by the plaintiff for a new trial, which was overruled by the court, and final judgment was rendered for the defendants.

The overruling of the motion for a new trial is the only error properly assigned.

The first reason for a new trial is, that the decision of the court is contrary to law. Nothing is urged under this reason.

The second reason stated is, that the decision of the court is not sustained by sufficient evidence. This ground is not well taken. A justice of the peace must be held to have power to attach and punish, as for a contempt, a juror thus conducting himself.

The statute provides, that "whenever a jury after having consulted together for a reasonable time, shall report to the justice that they cannot agree, he shall discharge them," etc. 2 G. & H. 591, sec. 54. It cannot be allowed that jurors, under such circumstances, may judge for themselves when they have "consulted together for a reasonable time." This must be decided by the justice of the peace. By leaving the court of the justice, under the circumstances, the appellant was guilty of a contempt, and was liable to attachment.

It is claimed that the attachment could not legally issue without an affidavit. But we do not think so. The justice had placed the jury in charge of the constable, and he had a right to expect that they would remain there until they

agreed upon a verdict, or were discharged by him. When they left his court in violation of their duty and of his orders, he needed no affidavit of the fact to justify him in issuing the attachment. When the attachment was returned, if there was any reason why the juror should not be punished, it might then be shown. We do not regard the contempt in this case as a constructive contempt, as defined in *Whittem* v. *The State*, 36 Ind. 196.

Counsel say the contempt, if one was committed, could not have been committed in the presence of the justice, as he had no right to be present in the jury room ; and if a juror leaves the room, the justice cannot know it, unless some one shall inform him; and hence, it is urged, an affidavit was necessary. This reasoning is not satisfactory to us. The justice could know that the jury had dispersed without himself being in the jury room when they left. They could only leave after making a verdict, or by his permission, after deliberating for a reasonable time. He necessarily knew that they had separated, without the happening of either event.

It appears from the evidence that the jurors, when they asked to be discharged, told the justice that they were hungry, having had nothing to eat since morning, and it then being about five o'clock P. M.; that the room in which they were kept was cold and uncomfortable; and that the justice said he would keep them together forty-eight hours, if they did not sooner agree. Justices are not provided with offices at the public expense. Many of them do so little business that they cannot afford to have a regular office. They hold their courts in dwelling-houses, school-houses, shops, barns, and sometimes in the grove. We could not say that a juror might run away because the place assigned to the jury for their deliberations was not entirely comfortable or well adapted to the purpose.

It has been and yet is the policy of the law to keep jurors together, without meat or drink, water only excepted, while they are deliberating. The fact that they became hungry is

no reason why they should disperse without permission of the court.

But it is urged that the attachment issued was illegal and void. It is as follows :

"HENRY COUNTY, SPICELAND TOWNSHIP.

"*Before W. R. Wilson, J. P. Spiceland Township:*

"The State of Indiana, to any constable of Spiceland town-ship: Whereas it appears to the satisfaction of the under-signed, a justice of the peace of said township, that James Steel, Jonathan Murphy, Edwin Murphy, Frank Winslow, F. M. Rhodes, Chris. Hough, and Hugh Murphy, did, in direct disobedience to the command of the undersigned justice, and in an unlawful manner, forcibly retire from the room in which they were confined, without being discharged by said justice; you are therefore hereby commanded to attach the bodies of said James Steel," etc., "and bring them forthwith before me, to answer to their alleged contempt in so disobeying as afore-said; and of this attachment make legal service and return.

"Given under my hand and seal, this 17th day of January, 1873.                    WM. R. WILSON, J. P." (SEAL.)

This writ was introduced, without objection by the plain-tiff, as a part of his evidence. It might have stated more fully the cause of its issuing, but we regard it as substan-tially correct. The reason for their arrest was stated to be a contempt of the authority of the court, and for that they were to answer. The cause of action, as stated in the com-plaint, is the arrest of the plaintiff, unlawfully and with force and arms, and conveying him, from, etc., without any legal writ, the plaintiff not then and there being guilty of any crime whatever, and detaining him for forty-eight hours, and causing him to lay out and expend ten dollars. The legal authority to make the arrest is the only question in the case, according to the complaint. This we think existed.

There are other reasons stated in the motion why a new trial should have been granted.

The third and fourth are the refusal of the court to admit certain evidence, as shown in the bill of exceptions. A reason

for a new trial which is thus made to depend upon the bill of exceptions, which had not yet been made, cannot be held sufficient.

The judgment is affirmed, with costs.